Eva Szymanski, plaintiff below, plaintff in error, *vs.* Ferdinand
Blumenthal and Julien Stevens Ullman, trading as F.
Blumenthal & Co., defendants below, defendants in error.

*Supreme Court—Submission of Facts to Jury— When Negligence is
a Question of Law for Court—Reversal of Court Below—Per-
sonal Injuries—Negligence—Duty of Master—Safe Place
and Tools for Servant—Obvious Danger—Loose Pul-
ley becoming Fast—Promulgation of Rules—
Pleading—Declaration.*

1. Negligence is the failure to observe, for the protection of the interests of an-
other person, that degree of care, precaution and vigilance which the circumstances
justly demand. And while the obligation to exercise care in the conduct of one's busi-
ness varies under different circumstances, there always remains the duty to exercise
such reasonable care as would be exercised by a person of ordinary prudence under
like circumstances.

2. It is the duty of the employer to provide for the employee a reasonably safe
place in which to work, and reasonably safe machinery and appliances with which to
work. Such place, machinery and appliances need not be the latest, the most im-
proved, or the best; but they must be so adapted to, and adequate for, the purpose for
which they are to be used as to be reasonably safe under all the conditions of the
employment.

3. The degree of care required of an employer in furnishing his employees
with a reasonably safe place and apparatus for his work is largely dependent upon the

danger to which the employee is or may be exposed. An apparatus which is suitable and safe for many purposes may be unsuitable and unsafe for others. A loose pulley for stopping machinery is doubtless in most cases entirely sufficient, but the question remains whether this device alone is sufficient and safe where its failure to remain loose will almost inevitably result in the death of any employee who may chance to be within the drum with which it is used.

4. If it appears from the evidence that there were other and inexpensive methods by which the revolution of the drum might have been prevented; that it was the duty of the defendant to provide some more certain method of device than a loose pulley for keeping the drum at rest, and that by reason of the failure to perform that duty the defendant was guilty of negligence, it was improper for the trial Court to take the case from the jury because the plaintiff had failed to produce any evidence tending to show why the pulley became fast.

5. And if there was testimony tending to show that the means provided by the defendant for preventing the revolution of the drum were inadequate, and that the drum as used was not a reasonably safe place in which to work, and that these things were known to the defendant, or, by the exercise of reasonable care, should have been known to him, the case should have been submitted to the jury.

6. While the language of the narr, in this case, charging the defendant with negligence in not providing the employee with a reasonably safe place in which to work might have been more specific, it is held to be sufficient, and also held that there was evidence tending to support it.

7. The question of negligence is one of law for the Court, only where the facts are such that all reasonable men must draw the same conclusion from them, or, in other words, a case should not be withdrawn from the jury unless the conclusion follows, as a matter of law, that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish.

8. It is the duty of the employer to make and promulgate proper rules for the government of his servants and business whenever the business is so large or complicated as to make his personal supervision impracticable. In the present case the question whether rules should have been promulgated was a matter for the consideration of the jury.

9. Where there is a question arising from the evidence whether the danger was obvious and should have been known to the servant under all the circumstances; or, if not, whether he had been properly instructed, the question of the liability of the master is one for the jury under proper instructions.

10. Whether the danger, in the present case, of the loose pulley becoming fast was known to the deceased, or was so patent that it should have been known to him, was, under instructions by the Court, a proper subject for the consideration of the jury.

(*January 19, 1904.*)

NICHOLSON, Ch., and SPRUANCE AND BOYCE, J. J., sitting.

*Andrew E. Sanborn* and *Edwin R. Cochran, Jr.*, for plaintiff in error.

*William S. Hilles* for defendants in error.

Supreme Court, June Term, 1903. (Opinion handed down January 19, 1904.)

WRIT OF ERROR to the Superior Court for New Castle County.

SPRUANCE, J., delivering the opinion of the Court:

This action was brought by the widow of Andrew Szymanski for the recovery of damages for the death of her husband, alleged to have been caused by the negligence of the defendants. The defendants were morrocco manufacturers and the deceased was one of their employees. The defendants used for dyeing and washing skins a number of large wooden drums which were revolved by steam power by means of cog wheels fitting into ratchets on the drums. The cog wheels were attached to counter shafts on each of which were two pulleys, one tight and the other loose. In the ordinary operation of the machinery, when the belt from the main shaft was on the tight pulley, the drum revolved, and when on the loose pulley, the drum would be at rest.

When the skins were sufficiently treated, it was usual to stop the drum by transferring the belt from the tight to the loose pulley, when a man entered the drum by a man-hole for the purpose of removing the plugs and discharging the liquid. The drum having been thus stopped, Szymanski, in the usual course of his employment, entered the drum for the purpose of removing the plug, when suddenly and without warning the drum rapidly revolved. Immediately other employees attempted to stop it, but after some delay, other means having failed, the belt was cut and

34

the revolutions ceased. Szymanski was found under the liquid and skins, unconscious, and he died from the effects of his injuries shortly after his removal from the drum.

The loose pulley was found to be fast and tight to the shaft and the shaft hot and bent. There was much evidence as to what might cause a loose pulley to become tight, but there was no evidence as to what caused the loose pulley to become fast on this occasion.

Upon the close of the plaintiff's testimony, the Court, on motion of the defendants, ordered a nonsuit, which being refused by the plaintiff, the Court directed the jury to return a verdict for the defendants, for the reasons stated in the opinion on the motion for a nonsuit, viz.: that there was no sufficient evidence to warrant the case going to the jury.

In the opinion upon the motion for a nonsuit the Court assumed, as was fully justified by the evidence, that the death of Szymanski resulted from a loose pulley becoming fast upon the shaft, and that the evidence did not disclose what caused the pulley to become fast. The peremptory instruction to the jury was based solely upon the theory that the plaintiff could not recover without proof, or evidence tending to prove, the cause of the loose pulley becoming fast, and that this was the result of the negligence of the defendants.

This view of the subject entirely ignored two other very important questions, viz., whether the defendants, upon the evidence, were guilty of negligence (1) in not furnishing the deceased employee with a reasonably safe place in which to work, and (2) in not providing suitable rules for his government and guidance.

In *Tully's Admr. vs. P., W. & B. R. R. Co., 2 Pennewill, 537*, this Court said: " Negligence in a legal sense is no more or less than this; the failure to observe for the protection of the interests of another person, that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury."

" While the obligation to exercise care in the conduct of one's business varies under different circumstances, there always remains the duty to exercise such reasonable care as should be exercised by a person of ordinary prudence under like circumstances."

In the recent case of *Strattner vs. Wilmington City Electric Company, 3 Pennewill, 247*, the Court say : " It was, therefore, the duty of the defendant to provide for the plaintiff a reasonably safe place in which to work, and reasonably safe machinery and appliances with which to work in the prosecution of his employment. Such place, machinery and appliances need not have been the latest, the most improved, or the best; but they must have been so adapted to and adequate for the purposes for which they were used to be reasonably safe under all the conditions of the employment."

The degree of care required of an employer in furnishing his employees with a reasonably safe place and apparatus for his work is largely dependent upon the danger to which the employee is or may be exposed. An apparatus which is suitable and safe for many purposes may be unsuitable and unsafe for others. A loose pulley for stopping machinery is doubtless in most cases entirely sufficient, but the question remains whether this device alone is sufficient and safe where its failure to remain loose will almost inevitably result in the death of any employee who may chance to be within the drum with which it is used. There was evidence to the effect that loose pulleys were liable to become tight from various causes, e. g., from a blow-hole in the metal, from grit or other hard substance, from want of oil, from the expansion of the metal by heat; and that the loose pulley in this case had a few months before this accident become tight from some unknown cause.

If the case had been submitted to the jury, and they had found from the evidence that it was the duty of the defendants to provide some more certain method or device than a loose pulley for keeping the drum at rest, and that by reason of their failure to perform that

duty they were guilty of negligence, further inquiry as to the cause of the pulley becoming fast, or whether this was the result of the defendants' negligence, would have been quite unnecessary.

It appears from the evidence that the only means provided by the defendants for keeping the drum at rest was the transfer of the belt to the loose pulley. The iron pipe sometimes used as a prop under one side of the drum was probably not used to prevent its revolution, but if it was, it was wholly insufficient for the purpose, being unsupported and liable to fall with any oscillation of the drum.

It is manifest from the evidence that there were other and inexpensive methods by which the revolution of the drum might have been effectually prevented; for example, by throwing off entirely the counter shaft belt, by securely fastening props under both sides of the drum, or by attaching to the counter shaft or drum a clutch to hold it fast.

There was testimony tending to show that the means provided by the defendants for preventing the revolution of the drum were inadequate, and that the drum as used by the defendants was not a reasonably safe place in which to work, and that these things were known to the defendants, or, by the exercise of reasonable care, should have been known to them.

The following accurate statement of the rule which should guide courts in the determination of questions of negligence is found in the case of *Gardiner vs. R. R. Co., 150 U. S., 349:* "The question of negligence is one of law for the Court, only where the facts are such that all reasonable men must draw the same conclusion from them, or, in other words, a case should not be withdrawn from the jury unless the conclusion follows as a matter of law, that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish."

Applying this rule, we are of the opinion that this case should have been submitted to the jury under proper instructions, as the record discloses evidence from which the jury might reasonably

have found that the defendants were guilty of negligence in not providing the employee with a reasonably safe place in which to work.

In the argument before us it was contended that the allegations of the declaration charging the defendants with negligence in not providing the employee with a reasonably safe place in which to work were not supported by the evidence. These allegations might, in the light of the evidence, have been made more specific, as, for example, by stating that the loose pulley was liable to become fast, and that it was for that reason, when used alone, an unsafe or insufficient appliance. The third count, after stating the duty of the defendants to provide proper and suitable appliances to prevent the sudden starting in motion of the drum, alleges that the defendants negligently provided and suffered to be used an improper and unsafe appliance for this purpose, in consequence whereof the drum suddenly started in motion, by reason whereof the employee was so injured that he died. This count appears to be sufficient, and there is evidence tending to support it. We do not think that there is any material variance between the allegations of the declaration and the evidence in respect to the insufficiency of the apparatus provided by the defendants for keeping the drum at rest. No such variance appears to have been insisted on at the trial, and it is too late to urge it now.—(*N. Y. Cent. Insurance Co. vs. Nat'l Ins. Co., 14 N. Y., 89.*)

It is the duty of a master to make and promulgate proper rules for the government of his servants and business whenever his business is so large or complicated as to make his personal supervision impracticable.

*Rex vs. Pullman Palace Car Co., 2 Marvel, 337 ; Murphy vs. Hughes Bros. & Bangs, 1 Pennewill, 250.*

The evidence disclosed that the morocco factory of the defendants was a very large establishment, using many complicated machines, and employing several hundred men, and that there were no published or promulgated rules or regulations for the govern-

ment of the defendants' servants or business. If there had been a rule prohibiting any employee from entering a drum unless the belt was thrown entirely off, it is probable that the life of Szymanski would have been saved. But it is not necessary for us to determine whether in this case rules should have been promulgated, or what those rules should have been, or whether the want of such rules occasioned the death of the employee.

These were questions proper for the consideration of the jury, and the evidence on behalf of the plaintiff was sufficient for their determination.

As neither the contributory negligence of the employee, nor his assumption of the risks of his employment was assigned by the defendants' counsel or by the Court as ground for the nonsuit or binding instructions, they can not now be properly urged in support of the judgment below.

But if the withdrawal of the case from the jury had been based by the Court upon these grounds, or either of them, we do not consider the evidence sufficient for that purpose.

Where there is a question arising from the evidence whether the danger was obvious, and should have been known to the servant under all the circumstances, or if not, whether he had been properly instructed, the question of the liability of the master is one for the jury under proper instructions.

*Bethlehem Iron Company vs. Weiss, 100 Federal, 45.*

Whether the danger of the loose pulley becoming fast was known to the deceased, or was so patent that it should have been known to him, was, under instructions by the Court, a proper subject for the consideration of the jury; but the evidence on that point was not so conclusive as to warrant the Court in deciding that the deceased knew, or should have known of such danger, and that he assumed the risk arising therefrom.

The judgment below is reversed.